**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| OPERATION OCR, LLC D/B/A OTHERWORLD FITNESS, | : |
| and | : |
| TIMOTHY J. GUINAN | : |
| Plaintiffs, | : |
| v. | : Case No. _____ |
| KATHLEEN PASSAFARO | : |
| and | : |
| PASSAFARO NOVA NINJA, LLC, D/B/A NOVA NINJA ASHBURN AND D/B/A NOVA NINJA, | : |
| Defendants. | : |

## **COMPLAINT**

Plaintiffs, Operation OCR, LLC d/b/a Otherworld Fitness and Timothy J. Guinan, by counsel, bring this Complaint and state as follows:

### **INTRODUCTION**

1. The subject of this lawsuit is a failed (and never consummated) business venture between Plaintiffs and Defendants.

2. Plaintiffs previously operated a gym in Frederick, Maryland.

3. In early 2021, after electing to close down their Frederick gym in Spring 2021, Plaintiffs began exploring the possibility of opening a gym in Northern Virginia.

4. In or around early February 2021, Plaintiffs began negotiations with Defendants

(who already operated a gym in Sterling, Virginia) to form a partnership and open a gym in Ashburn, Virginia.

5. With Plaintiffs' Frederick gym closing down, rather than move their gym equipment—which weighs thousands of pounds—to a storage unit only to have to move it again to Northern Virginia (at a cost of tens of thousands of dollars for two moves), Plaintiffs agreed to move their equipment to a location in Ashburn, Virginia already-leased by Defendants (the "Ashburn Gym").[1]

6. In addition, Plaintiffs allowed Defendants to use some of Plaintiffs' equipment at Defendants' gym location in Sterling (the "Sterling Gym") while the parties negotiated and attempted to form a partnership to operate the Ashburn Gym.

7. Unfortunately, after all of the equipment was moved to Ashburn and Sterling—and before any partnership was formed—negotiations between the parties broke down and were terminated in early June 2021.

8. Upon termination of the negotiations, Plaintiffs demanded that Defendants return the equipment from the Sterling Gym and allow Plaintiffs to remove Plaintiffs' equipment from the Ashburn Gym

9. Defendants refused to return the vast majority of the equipment and instead only permitted Plaintiffs a few hours to retrieve whatever equipment they could carry before locking Defendants out of the Ashburn Gym on June 8, 2021 at 5 p.m.

10. Defendants subsequently changed the locks to the Ashburn Gym.

11. Between June 9th and June 20th (and subsequently by counsel), Plaintiffs contacted Defendants continuously and frequently, offering a variety of dates and times to make the one-

---

[1] In addition, some of Plaintiffs' equipment was moved to Ms. Passafaro's private residence in Ashburn; however Plaintiffs do not have knowledge of the present location of that equipment.

plus hour drive to the Ashburn Gym from Germantown, Maryland to retrieve Plaintiffs' equipment (and Plaintiffs subsequently continued those efforts through counsel until the week prior to filing this Complaint).

12. Defendants either ignored Plaintiffs' attempts to coordinate a mutually agreeable time, or responded with statements such as how Defendants had posted No Trespass signs and/or how the parties should resolve their problems through lawyers.

13. In addition, despite Plaintiffs' repeated requests that equipment not be left outside in the elements and that certain equipment should not be used by customers, Defendants moved equipment outside to be left in the elements (during which time storms and hot summer weather occurred) and provided such equipment for customers to use. As a result, Defendant subsequently destroyed thousands of dollars' worth of Plaintiffs' equipment (by moving equipment outside and installing other equipment without authorization or professional guidance for customer use) and to date have only permitted Plaintiffs to retrieve a small amount of Plaintiffs' equipment—primarily tools.

14. Despite Plaintiffs demands and multiple requests for access to retrieve the remaining equipment, Defendants have refused to return the vast majority of the equipment—valued at more than $100,000.00—or compensate Plaintiffs for it.

15. Instead, since June 9, 2021 Defendants have used the equipment in both the Sterling Gym and Ashburn Gym to operate their business and generate substantial revenue, and have repeatedly asserted that they now own the vast majority of the equipment—despite not having paid Plaintiffs a dime for that equipment.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction under 28 U.S.C § 1332(a) because the

3

amount in controversy exceeds $75,000.00 and each plaintiff is not a citizen of the same state of each defendant.

17. Venue is proper in this District and Division under 28 U.S.C. §1391 because (1) a substantial part of the events or omissions giving rise to the claims occurred in this District and Division; (2) nearly all of the property that is the subject of this action is situated in this District and Division; and (3) all defendants are residents of Virginia, one of whom resides in this Division.

## PARTIES

### Defendants

18. Defendant Kathleen Passafaro is a resident of Loudoun County, Virginia

19. Defendant Passafaro Nova Ninja LLC, d/b/a NoVa Ninja Ashburn, and d/b/a NoVa Ninja limited liability organized under the laws of Virginia and all of its members reside in Loudoun County, Virginia

### Plaintiffs

20. Plaintiff Timothy J. Guinan is a resident of Montgomery County, Maryland.

21. Plaintiff Operation OCR, LLC d/b/a Otherworld Fitness is a Maryland limited liability company with it sole member residing in Maryland.

### FACTS

22. In early 2021, after closing down their gym in Frederick, Maryland, Plaintiffs began exploring a potential partnership with Defendants to establish a gym in Ashburn, Virginia.

23. Plaintiffs planned to contribute gym equipment worth well in excess of $100,000.00 to the partnership.

24. During the course Plaintiffs' negotiations with Defendants to form a partnership—having closed down their Frederick location—and with the expectation of partnering with

4

Defendants to open a new gym in Ashburn, Virginia at a location leased by Defendants (i.e. the Ashburn Gym), Plaintiffs moved more than $100,000.00 worth of gym equipment to the Ashburn Gym.

25.     Plaintiffs also moved tens of thousands of dollars in other equipment to a location owned/controlled/operated by Defendants in Sterling, Virginia (the "Sterling Gym").

26.     In addition to the value of the equipment Plaintiffs, performed significant and valuable labor of moving the equipment to the Ashburn and Sterling locations and    installing major pieces of equipment (*e.g.* floor mats and other large equipment) at those locations.

27.     However, as Plaintiffs negotiations continued with Defendants, Plaintiffs began discovering certain questionable business practices of Defendants.  These increasing concerns over Defendants' business practices include, without limitation, Defendants' prior ventures in which they failed to obtain proper state licenses and insurance and current ventures in which Defendants' accounting practices in allocating revenue and expenses seemed inaccurate or questionable.

28.     By early June 2021, Plaintiffs learned that Defendants were not performing in good faith to establish the partnership and were, among other things, (1) not operating the Sterling Gym in accordance with Virginia zoning and registration laws, (2) not available to assist in setting up the Ashburn Gym for the new partnership, (3)   canceling key business meetings or being unavailable by leaving town for recreational or non-work-related purposes when their presence was greatly needed, and (4) using the Ashburn Gym for its Sterling Gym customers without Plaintiffs' consent or knowledge.

29.     As a result, Plaintiffs never entered into a partnership with Defendants and explicitly disclaimed any such relationship—having never executed a memoranda of understanding, joint venture agreement, partnership agreement, and/or completed any corporate

documents to expand Plaintiffs' one-member LLC, etc.).

30.     Early in the afternoon of June 8, 2021 Plaintiffs informed Defendants they no longer wished to enter into a partnership, and demanded that Defendants immediately allow Plaintiffs to remove their personal property (primarily the gym equipment and power tools) located at both the Ashburn Gym and Sterling Gym.

31.     In response, Defendants set an arbitrary deadline of 5 p.m. on June 8, 2021 for Plaintiffs to remove as much of their property as possible from *only* the Ashburn Gym.

32.     Plaintiffs removed as much of their property as possible under that truncated and unreasonable time frame.

33.     At 5 p.m. on June 8, 2021, Defendants barred Plaintiffs from the Ashburn Gym property and have refused further access since that time—going so far as to send Plaintiffs a "no trespass notice."

34.     Subsequently, Plaintiffs demanded that Defendants allow them to retrieve the balance of their property from the Ashburn Gym and the Sterling Gym.

35.     On June 11, 2021, Defendants permitted Plaintiffs to retrieve a limited amount of their property—mostly tools—from the Ashburn Gym.

36.     However, after that date, Defendants have not been permitted any further access to the Sterling Gym or the Ashburn Gym.

37.     Subsequently, Defendants, without Plaintiffs' consent, placed tens of thousands of dollars of Plaintiffs' property outside in the elements—despite Defendants' demands that Plaintiffs not do so because it would cause irreparable damage—which caused thousands of dollars of damage to Plaintiffs' property, destroying that property, and rendering most of it unsalvageable.[2]

---

[2] Plaintiffs were able to retrieve and salvage a small amount of this equipment—but only after learning that it had been left outside in the elements for several days.

6

38. Since that time, Defendants have consistently refused to permit Plaintiffs access to the Ashburn Gym and/or the Sterling Gym—both of which Defendants completely control—so that Plaintiffs can retrieve their property.

39. Plaintiffs have made multiple attempts to arrange for professional movers to come to the Ashburn Gym to retrieve Plaintiffs' property, but Defendants have refused to cooperate to permit Plaintiffs access so that the movers can provide an estimate and coordinate the logistics of moving the several thousand pounds of equipment at that location.

40. Instead, in early July, Defendants—despite Plaintiffs protests and demands for access to the Ashburn Gym—unilaterally rented a storage container known as a "Zippy Shell" and removed an unknown amount of Plaintiffs' property from the Ashburn Gym (and possibly the Sterling Gym) and placed it in the *locked* Zippy Shell.

41. Defendants know the lock combination to the Zippy Shell and Plaintiffs do not.

42. Despite multiple demands for access, and Plaintiffs' willingness to travel to and retrieve their property from the Zippy Shell, Defendants have refused to provide the lock code to the Zippy Shell.

43. Instead, Defendants, since July 8, 2021 have consistently demanded that Plaintiffs *pay* for the cost of the Zippy Shell in exchange for being given access to Plaintiffs' *own property*.

44. Since June 9, 2021 Defendants have exercised total dominion and control over more than $100,000.00 worth of property belonging to Plaintiffs and have used most of it to operate Defendants' businesses at the Ashburn Gym and Sterling Gym.

45. Upon information and belief, Defendants generated tens of thousands of dollars in revenue through the use of Plaintiffs' property in the last month alone and will continue to generate substantial revenue through the use of Plaintiffs' property.

7

46. Defendants have repeatedly asserted that the majority of the gym equipment at issue (i.e. all of the equipment except the equipment that Defendants threw away or placed in the Zippy Shell) somehow now belongs to Defendants and that Defendants intend to keep that equipment.

47. Despite multiple demands from Plaintiffs, Defendants have refused to compensate Plaintiffs for that equipment.

## COUNT ONE
### Common Law Conversion

48. Plaintiffs incorporate all of the preceding paragraphs as if fully set forth herein.

49. Defendants have repeatedly, wrongfully, and unequivocally asserted dominion and authority of Plaintiff's personal property at both the Sterling Gym and the Ashburn Gym in denial of Plaintiff's rights and/or inconsistent with Plaintiffs' rights of control of that property.

50. Among other things, Defendants have altered some of Plaintiffs' property by installing it at the Sterling Gym and Ashburn Gym even after Plaintiffs demanded its return.

51. In addition, Defendants have converted Plaintiffs' property for their own use in operating their business, and refused to compensate Plaintiffs for that property in conscious disregard of Plaintiffs' rights.

52. As a result, Plaintiffs have suffered more than $100,000.00 in damages.

## COUNT TWO
### Common Law Trespass to Chattels

53. Plaintiffs incorporate all of the preceding paragraphs as if fully set forth herein.

54. Contrary to Plaintiffs' demands and without Plaintiff's consent, Defendants removed some of Plaintiffs' personal property valued at tens of thousands of dollars from the Ashburn Gym and placed it in the parking lot outside the gym (exposed to the elements) where it was destroyed and/or disposed of contrary to Plaintiffs' express wishes.

55. In addition, Defendants have placed tens of thousands of dollars' worth of Plaintiffs' personal property in the Zippy Shell outside of the Ashburn Gym without Plaintiff's consent and contrary to Plaintiffs' express wishes.

56. Prior to Defendants' paying for and acquiring the Zippy Shell (and putting Plaintiffs' property in the Zippy Shell), Plaintiffs explicitly stated to Defendants they had already made their own arrangements to retrieve the same property, informed Defendants that Plaintiffs would not pay for the Zippy Shell, and demanded that Defendants neither rent the Zippy Shell, nor place any of Plaintiffs' property in that container.

57. Nonetheless, Defendants obtained and paid for the Zippy Shell on July 8, 2021.

58. At some point after that, Defendants placed an unknown amount of Plaintiffs' equipment (of an unknown value) in the Zippy Shell—the condition of such equipment, resulting from Defendants' moving of such equipment, is also unknown and of concern to Plaintiffs given Defendants' past disregard for the reasonable care of Plaintiffs' equipment.

59. As of the date of this Complaint Defendants have refused to return that equipment and have refused to provide Plaintiffs with the lock combination or other access to the Zippy Shell, unless Plaintiffs pay a ransom to Defendants.

60. As a result Plaintiffs have been damaged in the loss of use of that property in an unknown amount in excess of at least $30,000.00.

61. In addition, Defendants have continued to use, profit from, and exercise dominion and control over all of Plaintiffs' other property at the Sterling Gym and Ashburn Gym causing damages to Plaintiffs in excess of $100,000.00.

62. Defendants have no right to possession, use, or control over Plaintiffs' property in the Zippy Shell or otherwise.

63. As a result of Defendants wrongful actions, Plaintiffs have suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment in their favor and against Defendants in an amount to be proven at trial, but in any event no less than $175,000.00 in actual damages, plus punitive damages to be awarded by a jury; and that the Court grant the following declaratory and injunctive relief: (a) declare that Plaintiffs are entitled to immediate possession of their personal property that is in the Zippy Shell and preliminarily and permanently enjoin Defendants from barring Plaintiffs from accessing that container; (b) preliminarily and permanently enjoin Defendants from selling, modifying, or otherwise disposing of any of Plaintiffs' personal property that is in the Zippy Shell or otherwise in Defendants' possession (which Defendants do not intend to keep); and (c) that the Court preliminarily and permanently enjoin Defendants from causing any third-party to sell, modify, or otherwise dispose of Plaintiffs' personal property that is the subject of this Complaint.

Dated: July 21, 2021                    Respectfully submitted,

/s/ Andrew M. Williamson
Andrew M. Williamson (VSB No. 83366)
**A.WILLIAMSON, LLC**
12410 Milestone Center Drive, Suite 600
Germantown, MD 20876
Phone: 301-916-1560
Email: amw@awilliamson.law
*Counsel for Plaintiffs*

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues so triable in this action.

/s/ Andrew M. Williamson